UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:95-cr-00005-FDW

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| MARC PIERRE HALL, | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on several motions filed by Defendant, who appears pro se, asking this Court to reduce his sentence pursuant to section 404 of the First Step Act of 2018, Pub. L. 115-135 (2018), and for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a), as well as related motions seeking a hearing and for consideration of supplemental evidence in support of his motions. (Doc. Nos. 1048, 1049, 1053, 1071, 1076, 1081). In accordance with district practice,[1] the United States Probation Office prepared a Supplemental Presentence Report pursuant to the First Step Act of 2018 (hereafter, "Supplemental First Step Act PSR"). (Doc. No. 1018). The Government responded in opposition to a reduction in Defendant's sentence (Doc. No. 1065), and as directed by the Court, (Doc. No. 1089), supplemented its response (Doc. No. 1091). Defendant also supplemented his previous pleadings (Doc. Nos. 1090, 1095), and filed several motions regarding his response time to do so (Doc. Nos. 1092, 1094). Defendant also seeks courtesy copies of several documents from the docket, (Doc. No. 1096), and

---

[1] The Court notes that Defendant previously filed a motion seeking a reduction in sentence pursuant to the First Step Act, (Doc. No. 1004), and, as a result of that filing, the Probation Office prepared and filed the Supplemental First Step Act PSR (Doc. No. 1018). Defendant subsequently withdrew his original First Step Act motion, (Doc. No. 1023). In light of Defendant's refiling of motions seeking a reduction pursuant to the First Step Act and based on the arguments contained therein, the Supplemental First Step Act PSR is relevant and applicable to the motions at bar.

1

Rule 11 sanctions against the Government attorneys in this matter (Doc. No. 1097). The Court addresses the various motions below.

## I. Background

On December 15, 1995, a jury convicted Defendant of conspiracy to possess with intent to distribute crack and powder cocaine within 1,000 feet of a playground and school in violation of 21 U.S.C. §§ 846, 860 ("Count 1"); two counts of carrying a firearm or destructive device during and in relation to a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1) ("Counts 10 and 11"); and maliciously damaging and destroying a building and real property used in and affective interstate commerce in violation of 18 U.S.C. § 844(i) ("Count 12"). (Doc. No. 345). The Government filed a notice under Section 851 indicating it intended to seek an enhanced penalty based on Defendant's prior convictions for felony drug offenses.

At the sentencing hearing on April 23, 1996, the court found Defendant's: 1) total offense level to be 43; 2) criminal history category to be III; and 3) guideline range to be life imprisonment for the drug conspiracy offense in Count 1 based on 21 U.S.C. § 851 enhancing the statutory minimum sentence, five years consecutive for the first Section 924(c) offense in Count 10, life imprisonment consecutive for the second Section 924(c) offense in Count 11, and not more than forty years concurrent for the destruction of property offense in Count 12. (See Doc. No. 970; Doc. No. 971, p. 69; Transcript of Sentencing Hearing, April 23, 1996). The Court imposed a sentence of life imprisonment on Count 1; a term of 480 months imprisonment on Count 12, to be served concurrently; a term of 60 months imprisonment on Count 10 to be served consecutive to the terms imposed on Counts 1 and 12, and a term of life imprisonment on Count 11 to be served consecutive to the terms imposed on Counts 1, 10, and 12 . (Doc. No. 971, pp. 72-73). The Court

2

also imposed a term of supervised release for ten years for Count 1, three years on Count 10, and five years on Counts 11 and 12, all to run concurrently. (Id. at p. 73). Defendant appealed his convictions and sentence, both of which were affirmed by the Fourth Circuit. United States v. Hall, 129 F.3d 1261, 1997 WL 712885 (4th Cir. 1997); cert. denied 524 U.S. 932 (1998). Defendant has also filed multiple motions pursuant to 28 U.S.C. § 2255 challenging his sentence, and the denial of those motions has been affirmed or dismissed on appeal. See United States v. Hall, No. 3:95-CR-5-FDW-1, 2021 WL 4129619, at *1 (W.D.N.C. Sept. 9, 2021) (collecting cases), aff'd as modified, No. 21-7350, 2021 WL 5445974 (4th Cir. Nov. 22, 2021).

The Court subsequently denied Defendant's motions for sentence reduction made pursuant to Amendments 706, 750, and 782 of the United States Sentencing Guidelines, finding there was no change in the Guideline calculation for Defendant. (Doc. Nos. 828, 921, 962). Accordingly, Defendant's original sentence remains in place, of which he has served *approximately* 325 months as of the date of this Order, and he does not have a projected release date because he is serving multiple life sentences. (Doc. Nos. 920, p. 4; 1018, pp. 3, 6).

## II. Sentence Reduction Pursuant to Section 404 of the First Step Act

Defendant seeks relief pursuant to Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which made the Fair Sentencing Act of 2010, Pub. L. No. 111-220, retroactive. The Fair Sentencing Act described itself as intended "[t]o restore fairness to Federal cocaine sentencing." Id., 124 Stat. at 2372. In Section 2, labeled "Cocaine Sentencing Disparity Reduction," the Fair Sentencing Act increased the quantities applicable to cocaine base to 280 grams for the ten-year mandatory minimum and to 28 grams for the five-year mandatory minimum. Id. § 2, 124 Stat. at 2372 (codified at 21 U.S.C. § 841(b)(1)). In Section 3, the Fair Sentencing

3

Act eliminated the mandatory minimum sentence for "simple possession" of cocaine base. Fair Sentencing Act § 3, 124 Stat. at 2372 (codified at 21 U.S.C. § 844(a)).

With its enactment in 2018, Section 404 of the First Step Act gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010 and allows the court that imposed a sentence for a covered offense to exercise its discretion to impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed. Id. The Fourth Circuit has explained the impact:

> [B]efore the Fair Sentencing Act, crack cocaine trafficking offenses fell into three brackets: (1) offenses involving 50 or more grams, which were punished by 10 years to life in prison, see 21 U.S.C. § 841(b)(1)(A)(iii) (2006); (2) offenses involving between 5 and 50 grams, which were punished by 5 to 40 years in prison, see 21 U.S.C. § 841(b)(1)(B)(iii) (2006); and (3) offenses involving less than 5 grams (or an unspecified amount), which were punished by 0 to 20 years in prison, see 21 U.S.C. § 841(b)(1)(C) (2006). The Fair Sentencing Act's amendments to Subsections 841(b)(1)(A)(iii) and (B)(iii) shifted all three brackets upward, so that now (1) offenses involving 280 or more grams are punished by 10 years to life in prison, see 21 U.S.C. § 841(b)(1)(A)(iii) (2018); (2) offenses involving between 28 and 280 grams are punished by 5 to 40 years in prison, see 21 U.S.C. § 841(b)(1)(B)(iii) (2018); and (3) offenses involving less than 28 grams (or an unspecified amount) are punished by 0 to 20 years in prison, see 21 U.S.C. § 841(b)(1)(C) (2018).

United States v. Woodson, 962 F.3d 812, 815 (4th Cir. 2020).

**A.    Standard of Review**

This court must first determine whether Defendant's sentence satisfies the explicit criteria to *qualify* for reduction under the First Step Act, and, if so, then the court is given discretion to *impose* a reduced sentence as if the Fair Sentencing Act were in effect at the time the covered offense was committed. The Fourth Circuit has explained:

> [A] district court presented with a First Step Act motion to reduce a sentence must first determine whether the sentence qualifies for reduction — i.e., whether it is eligible for consideration on the merits. This eligibility determination is not a

4

function of discretion but simply of applying the explicit criteria set forth in the First Step Act. *First*, the sentence sought to be reduced must be for a "covered offense" — that is, "a violation of a Federal criminal statute the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, and that was committed before August 3, 2010." First Step Act, § 404(a), 132 Stat. at 5222 (citation omitted). We have concluded that a "covered offense" includes violations under 21 U.S.C. §§ 841(b)(1)(A)(iii), (b)(1)(B)(iii), and (b)(1)(C). *Second*, the motion for a reduction must be addressed to the court that imposed the subject sentence. First Step Act, § 404(b), 132 Stat. at 5222; cf. 28 U.S.C. § 2255(a) (requiring that § 2255 motions challenging sentences be made to "the court which imposed the sentence"). And *third*, the sentence must not have been "previously imposed or previously reduced" under the Fair Sentencing Act and must not have been the subject of a motion made after enactment of the First Step Act that was denied "after a complete review of the motion on the merits." First Step Act, § 404(c), 132 Stat. at 5222.

Upon determining that a sentence qualifies for review on the merits, the court is then given discretion to impose a reduced sentence as if the Fair Sentencing Act were in effect at the time the covered offense was committed. First Step Act, § 404(b), 132 Stat. at 5222. The stated policy governing the exercise of this discretion is to bring a sentence that is qualified for reduction in line with a sentence that the court would have imposed under the Fair Sentencing Act had it been in effect. [See Fact Sheet, Senate Comm. on the Judiciary, The First Step Act of 2018 (S. 3649) — as Introduced (Nov. 15, 2018)].

To determine the sentence that the court would have imposed under the Fair Sentencing Act, the court must engage in a brief analysis that involves the recalculation of the Sentencing Guidelines in light of intervening case law and a brief reconsideration of the factors set forth in 18 U.S.C. § 3553(a). And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing.

United States v. Lancaster, 997 F.3d 171, 174–75 (4th Cir. 2021) (internal case citations and quotations omitted; emphasis in original); see also Collington, 995 F.3d at 355.

The Fourth Circuit requires that the imposition of a reduced sentence be procedurally and substantively reasonable, which means that in exercising its discretion, the district court must "consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the § 3553(a) factors, determine—following the Fair Sentencing Act—whether a given

5

sentence remains appropriate in light of those factors, and adequately explain that decision." Collington, 995 F.3d at 360 (citations omitted). Notwithstanding the procedural and substantive reasonableness requirements in this Circuit, the Court is not required to engage in a complete resentencing of Defendant:

> Engaging in this analysis nonetheless leaves the court with much discretion, and the analysis is not intended to constitute a plenary resentencing. Moreover, the analysis is not intended to be a complete or new relitigation of Guidelines issues or the § 3553(a) factors. Rather, the scope of the analysis is defined by the gaps left from the original sentencing to enable the court to determine what sentence it would have imposed under the Fair Sentencing Act in light of intervening circumstances. If, after conducting the analysis, the court determines that the sentence would not be reduced, then no relief under the First Step Act is indicated.

Lancaster, 997 F.3d at 175 (case citations omitted); see also Collington, 995 F.3d at 358 ("Ultimately, the First Step Act contemplates a robust resentencing analysis, albeit not a plenary resentencing hearing."); but see Lancaster, 997 F.3d at 178 (Wilkinson, J., concurring) ("[O]ur circuit, notwithstanding the protestations, has come very close to requiring a plenary resentencing at a more than ten-year remove from the most relevant evidence."). Bearing these principles in mind, the Court turns to Defendant's arguments.

**B.     First Step Act**

Defendant asks this Court to reduce his sentence to time served with no supervised release and, in doing so, to conduct a "full resentencing hearing' on all counts." (Doc. Nos. 1048, 1049). As to Defendant's request for a hearing, the Fourth Circuit has recognized a defendant need not be present when considering his motions for sentence reduction pursuant to the First Step Act. United States v. Collington, 995 F.3d 347, 360 (4th Cir. 2021) (noting "procedural reasonableness in this context [of a First Step Act motion under Section 404(b)] would not require the district court to hold a resentencing hearing") see also Fed. R. Crim. P. 43(b) ("A defendant need not be present

6

under any of the following circumstances: . . . (4) Sentence Correction. The proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)."); Dillon v. United States, 560 U.S. 817, 825-828 (2010); United States v. Barraza, No. 3:07-CR-00079-FDW, 2021 WL 4810338, at *1 (W.D.N.C. Oct. 14, 2021) ("Dillon and the express terms of Rule 43(b)'s reference to '18 U.S.C. § 3582(c)' in its entirety and without limitation to subsection necessarily means a defendant is not required to be present for sentence reduction proceedings conducted pursuant to § 3582(c)(1)(A), § 3582(c)(1)(B), or § 3582(c)(2)."). Accordingly, no hearing is required, and that motion is denied.

Here, Defendant's 1995 conviction for conspiracy to possess with intent to distribute cocaine base qualifies for a sentence reduction under the First Step Act. See First Step Act § 404(a), 132 Stat. at 5222; see also Lancaster, 997 F.3d at 174 (4th Cir. 2021) ("We have concluded that a "covered offense" includes violations under 21 U.S.C. §§ 841(b)(1)(A)(iii), (b)(1)(B)(iii), and (b)(1)(C)." (Citations omitted)). None of Defendant's other convictions from 1995 qualify as "covered offenses."

Having determined Defendant qualifies for a reduction, the Court turns to the merits of Defendant's motion seeking reduction to time served and no supervised release. In conducting this analysis, the Court has reviewed the record, the parties' arguments, the new advisory guideline range, and all relevant factors under 18 U.S.C. § 3553(a). See, e.g., Chavez-Mesa v. United States, 138 S. Ct. 1959, 1966–68 (2018); Lancaster, 997 F.3d at 176; Collinston, 995 F.3d at 360; Chambers. 956 F.3d at 671–75; United States v. May, 783 F. App'x 309, 310 (4th Cir. 2019) (per curiam) (unpublished).

Defendant's recalculated guidelines range results in a new advisory guideline range of 360 months to 720 months with 12 years of supervised release.[2] (See Doc. No. 1018, pp. 2-3). In this case, Defendant's indictment did not charge a drug quantity. (Doc. No. 3). Under the First Step Act, "A defendant cannot be resentenced under a statute carrying a mandatory minimum sentence when he or she was not indicted for any particular drug quantity and the jury was never required to make a finding that would support the application of a mandatory minimum." Jones v. United States, 431 F.Supp.3d 740, 751 (E.D. Va. 2020). In such situations, defendants must be resentenced for an unspecified drug quantity pursuant to § 841(b)(1)(C), which carries no minimum and a maximum sentencing range of 20 years. Id.; see also Collington, 995 F.3d at 356 (holding that a district court abuses its discretion if it lets stand a sentence that exceeds the statutory maximum established by the Fair Sentencing Act). Defendant's § 851 enhancement would elevate the statutory maximum for his drug conviction to 30 years. 21 U.S.C. § 841(b)(1)(C). And, since Defendant was also convicted of violating 21 U.S.C. § 860, his statutory penalty for the drug offense is twice the maximum punishment authorized by Section 851(b), including twice the term of supervised release, thus resulting in a statutory maximum of 720 months imprisonment and 12 months of supervised release.

The Government concedes this Court is required to reduce Defendant's drug-trafficking sentence to a term no greater than 720 months in prison for his drug-trafficking offenses and argues no further reduction is warranted in light consideration of the applicable § 3553(a) factors. In

---

[2] This is based on a total offense level of 40 and criminal history category III, and it also takes into consideration the fact the statutory maximum, as explained herein, is less than the maximum guidelines range of 360 months to life. See U.S.S.G. § 5G1.1.

considering the relevant 18 U.S.C. § 3553(a) factors,[3] the Court can consider Defendant's sentence-modification arguments and post-sentencing mitigation evidence provided in support of the instant motion.  See, e.g., Chavez-Meza v. United States, __ U.S. __, 138 S. Ct. 1959, 201 L.Ed.2d 359 (2018) (explaining obligations of district judge in addressing sentence-modification motion under 18 U.S.C. § 3582(c)(2)); United States v. Martin, 916 F.3d 389 (4th Cir. 2019) (applying Chavez-Meza and explaining obligation of district judge to consider post-sentencing mitigation evidence and provide rationale in addressing § 3582(c)(2) sentence-modification motion).

Looking to the nature and circumstances of the offense, the Court notes the original sentencing judge's characterization of Defendant's conviction when imposing the original sentence.  There, the sentencing judge stated:

> Mr. Hall, the crimes for which you have been convicted are extremely serious. They are among the most serious that I have seen in a long time.  Your activity in connection with the pursuit to those crimes is particularly egregious.  The record shows beyond any serious question that you were responsible in large measure for the distribution of very substantial amounts of drugs, and for much violence in association with that, and for involving many young people in pursuant of your greed.

(Doc. No. 971, p. 72).  The record, including the sentencing transcript and the Fourth Circuit's summation of the trial evidence, supports this conclusion regarding the serious nature of Defendant's offenses.  See Hall, 129 F.3d 1261, 1997 WL 712885 *1 (summarizing evidence at trial regarding Defendant's participation in home invasions using firearms, firebombing,

---

[3] In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the Court considers "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" "the need to avoid unwarranted sentence disparities;" and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

9

engagement of juveniles for criminal conduct, and conversations with others whereby Defendant agreed to be a hitman for assaults on others). The offense conduct also includes Defendant's participation in dealing drugs within 1000 feet of a school or playground, and Defendant's criminal history indicates he had a previous conviction for a drug transaction near a school in New Haven, Connecticut. (Doc. No. 970). In addition, the offenses for which he is currently incarcerated occurred while Defendant was on probation. (Id.)

The record also reflects Defendant, who is approximately 58 years old, has accumulated 77 disciplinary citations while in the Bureau of Prisons, several of which include citations for threatening bodily harm, possessing a weapon, and assault. Defendant asserts these incidents have lessened in recent years and contends his mental health conditions negate the import of these disciplinary citations. Notwithstanding the mitigating impact of his mental health and improved behavior, Defendant's conduct while incarcerated is indicative of the need for adequate deterrence and to protect the public.

While the Court commends Defendant for his successful participation in dozens of programs while in prison, the completion of these programs is not remarkable given the length of time Defendant has been incarcerated. See United States v. High, 997 F.3d 181, 190 (4th Cir. 2021) (recognizing "While these are certainly positive factors, they are much more similar to the various educational courses Chavez-Meza had taken in prison than to the exceptional post-sentencing conduct of the defendants in Martin and McDonald." (citing Chavez-Meza, 138 S. Ct. at 1967; Martin, 916 F.3d at 396; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021)).

The Court finds that the balancing of § 3553(a) factors, when considered for this Defendant under this record and including his positive post-sentencing rehabilitation, counsel that a sentence

10

reduction to a new imposed sentence of 720 months for Count 1 is appropriate. In so ruling, the Court leaves intact the ten years of supervised release as originally imposed for that Count.

### III. Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(a)

Defendant has filed multiple motions seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Following enactment of the First Step Act, "§ 3582(c) permits incarcerated persons to file motions for compassionate release directly with the district court so long as they first exhaust their administrative remedies." United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam). If an inmate has exhausted his or her administrative remedies, the court—in its discretion—may grant an inmate's motion for compassionate release if the court: 1) finds extraordinary and compelling reasons warrant a sentence reduction, and 2) considers the relevant 18 U.S.C. § 3553(a) sentencing factors. 18 U.S.C. § 3582(c)(1)(A); see also Kibble, 992 F.3d at 330-31, 331 n.3 (per curiam) ("In stark contrast to the portion of the statute that requires a sentence reduction to be 'consistent with applicable policy statements,' § 3582(c)(1) merely requires district courts to 'consider[ ]' the relevant § 3553(a) factors. We understand this language as providing district courts with procedural guardrails for exercising their discretion, not creating a substantive prerequisite to compassionate release.").

Here, the parties do not seem to dispute whether the administrative exhaustion requirement is satisfied. The Court thus turns its analysis to whether extraordinary and compelling reasons exist to reduce Defendant's sentence and consideration of the relevant § 3553(a) factors.

Defendant presents several arguments to support his compassionate release motions, and the Court addresses two in detail: (1) the combined impact of Defendant's health conditions and the COVID-19 virus, and (2) the changes in law for the life sentence imposed for his "stacked"

11

Section 924(c) offenses. The Court addresses these in turn.

After reviewing the record, the Court concludes that Defendant's reliance on the combined impact of his health conditions and the impact of the COVID-19 virus fail to demonstrate extraordinary and compelling circumstances to warrant a reduction. See Kibble, 992 F.3d at 333-34 (Gregory, C.J., concurring) (recognizing requirement of "fact-intensive inquiry" that considers "circumstances that, collectively, qualif[y] as extraordinary and compelling" (citations omitted)). The Court acknowledges the seriousness of Defendant's asserted medical conditions, but these conditions—several of which are chronic—do not rise to the level of "extraordinary or compelling" under this record, particularly where Defendant's health records indicate that he has been receiving regular medical care and medications for his underlying health conditions. Defendant has not presented evidence that he is experiencing a serious deterioration in his physical or mental health because of his age.

Defendant argues that his imprisonment during the COVID-19 pandemic—something not anticipated by the sentencing court—increased his prison sentence's punitive effect, making it a "death sentence," and constitutes extraordinary and compelling circumstances that warrant a sentence reduction. As my fellow colleague from the Middle District of North Carolina has explained:

> While circumstances that "undoubtedly increase a prison sentence's punitive effect" may constitute extraordinary and compelling circumstances in some individual cases, United States v. Kibble, 992 F.3d 326, 336 (4th Cir. 2021) (Gregory, J., concurring), if every defendant who experiences hardship during their incarceration is entitled to a finding of extraordinary and compelling circumstances, compassionate release would become the "exception that swallows the general rule of finality." United States v. Hancock, No. 1:06-CR-206-2, 2021 WL 848708, at *5 (M.D.N.C. Mar. 5, 2021). This is particularly true of inmates confined in congregate living situations during the COVID-19 pandemic.

United States v. Chavis, No. 1:18-CR-481-3, 2021 WL 2784653, at *3 (M.D.N.C. July 2, 2021). Moreover, the "hardships" that Defendant claims to have experienced in prison during the COVID-19 pandemic are not particular to Defendant. "Many inmates, as well as non-incarcerated individuals, have been infected with the COVID-19 virus and survived (or feared being infected with the virus), lost close relatives or friends due to the pandemic, and endured isolation, limits on movement, and other restrictive protocols during the pandemic." United States v. Hood, No. 5:18-CR-5-KDB, 2021 WL 3476142, at *1 (W.D.N.C. Aug. 6, 2021) (collecting cases). Thus, Defendant's incarceration during the pandemic does not constitute an "extraordinary and compelling" circumstance warranting early release. The Court also concludes Defendant has failed to carry his burden to sufficiently establish that the *combined* impact of Defendant's underlying health conditions, the threat of the COVID-19 pandemic, and the conditions of his confinement within the Bureau of Prisons' system where he is receiving adequate medical care for his conditions warrants a sentence reduction under § 3582(c)(1)(A)(i).[4]

Next, Defendant argues that the life sentence imposed for his second Section 924(c) offense is an extraordinary or compelling circumstance justifying his compassionate release. Section 403(a) of the First Step Act of 2018 amended 18 U.S.C. § 924(c) to remove the possibility that a defendant will receive "stacked" § 924(c) sentences by requiring that the 25-year mandatory

---

[4] See e.g., Kibble, 992 F.3d at 333–34 (Gregory, C.J., concurring) ("Here, Mr. Kibble identified three circumstances that, collectively, qualified as extraordinary and compelling: (1) the uncontrolled spread of COVID-19 at FCI Elkton, (2) his tricuspid atresia, and (3) his non-alcohol related cirrhosis of the liver. The district court agreed and so found. At the time of Mr. Kibble's motion, nearly 25% of Elkton's population had contracted COVID-19; nine inmates had died as a result. The ACLU of Ohio and the Ohio Justice & Policy Center had named FCI Elkton as a defendant in a class action suit challenging the facility's conditions of confinement during the pandemic. And, at the time of Mr. Kibble's motion, Elkton was subject to a preliminary injunction aimed at correcting the facility's mismanagement. See Wilson v. Williams, 455 F. Supp. 3d 467, (N.D. Ohio 2020), vacated by Wilson v. Williams, 961 F.3d 829, 833 (6th Cir. 2020). This combination of factors rightly gave rise to the extraordinary and compelling circumstances animating this case."). In contrast, Defendant here has failed to provide a sufficient combination of factors, supported by the record, to support a finding of extraordinary and compelling reasons.

13

minimum that applies for a second or successive § 924(c) conviction applies only "when a prior § 924(c) conviction arises from a separate case and already has become final." First Step Act of 2018 § 403(a), Pub. L. No. 115-391, 132 Stat. 5194, 5222. This amendment, however, did not apply retroactively to sentences imposed before December 21, 2018, the effective date of the First Step Act. Id. § 403(b). Therefore, Defendant was not entitled to seek a reduction of his sentence under this provision.

In McCoy, however, the Fourth Circuit recognized that district courts may "consider changes in sentencing law as part of the 'extraordinary and compelling reasons' inquiry." 981 F.3d at 287-88. Specifically, in McCoy, the Fourth Circuit affirmed the district courts' findings that "the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." Id. at 285. "Nothing in McCoy, however, requires the court to reduce a defendant's sentence once the defendant shows that new statutory or case law would have benefitted the defendant, if such law had existed at the time of the defendant's sentencing." United States v. Spencer, 521 F. Supp. 3d 606, 610 (E.D. Va.), aff'd, 853 F. App'x 833 (4th Cir. 2021). Rather, the Court cautioned that the determination of whether a sentence reduction should be based on a "full consideration of the Defendant's individual circumstances," including the length of time already served, any rehabilitative efforts made while incarcerated, the defendant's prior criminal history, and the defendant's age at the time of the offense. McCoy, 981 F.3d at 286.

Here, the Court originally imposed sentences of life imprisonment plus five years for Defendant's "stacked" § 924(c) convictions. If sentenced today on the offenses as charged,

14

Defendant would likely receive a much lighter, though still very lengthy, sentence. He would receive at least five years imprisonment for his first § 924(c) conviction (Count 10) and a consecutive sentence of at least 30 years in prison for his § 924(c) offense involving a destructive device (Count 11). Combined with the 720-month term for Defendant's drug-trafficking offense, Defendant's firearm convictions would result in an aggregate sentence of 1,140 months, or 95 years, in prison—still a very lengthy sentence. Considering the severity of the Defendant's stacked § 924(c) sentences, combined with the disparity between that sentence and the sentence he would likely receive today, the Court concludes that the Defendant has established an "extraordinary and compelling" reason for a sentenced reduction.

Defendant's multiple pending motions and filings with this Court assert other alleged "extraordinary and compelling" reasons to further reduce his sentence. The Court recognizes it is "empowered . . . to consider *any* extraordinary and compelling reason for release" and the Court has done so by considering all reasons Defendant has raised in his various motions. McCoy, 981 F.3d at 284 (4th Cir. 2020) (quotation omitted; emphasis in original). Other than the extraordinary and compelling reasons noted herein, the Court rejects his remaining arguments, including those regarding alleged "errors" in calculating his sentence and the application of the rule of lenity. In so ruling, the Court DENIES Defendant's request to have additional briefing "for the parties to include Count (12) in their briefing." (Doc. No. 1092).

Because the Court finds Defendant has sufficiently met his burden of establishing an "extraordinary and compelling circumstance" for a sentence reduction on his stacked Section 924(c) offenses, the Court considers whether a reduction in the sentence imposed for Counts 10 and 11 is warranted under this record and in consideration of the applicable § 3553(a) factors.

15

High, 997 F.3d at 186 ("[I]f a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction. Rather, it must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. 18 U.S.C. § 3582(c)(1)(A).").

In reconsidering all § 3553(a) sentencing factors applicable here, the Court incorporates its prior analysis of the § 3553(a) in the section above addressing Defendant's motions pursuant to the First Step Act. Additionally, and as noted above, there is a considerable disparity between the sentence Defendant received for his § 924(c) convictions in 1996 and what he would likely receive for those offenses today. Thus, granting Defendant compassionate release would not create any unwarranted sentencing disparities.

In addition, as McCoy instructs, the Court considers that Defendant has served appropriately 325 months of his sentence, he has made some rehabilitative efforts while incarcerated (although, as stated above, these are not remarkable given the length of time Defendant has been in the BOP system), and Defendant's age of thirty-one years old at the time of the offense. 981 F.3d at 286. For all these reasons, the Court concludes that the relevant § 3553(a) factors and the McCoy considerations weigh in favor of granting a reduction of the Defendant's term of imprisonment for the two § 924(c) offenses (Counts 10 and 11) to an aggregate total of 420 months to run consecutively to Defendant's sentence for the drug-trafficking offense (Count 1).

III. Conclusion

For the reasons above, IT IS THEREFORE ORDERED that the Court GRANTS in part and DENIES in part Defendant's Motions for Relief Under the First Step Act and for Compassionate Release. (Doc. Nos. 1048, 1053, 1071). Defendant's sentence is reduced to an aggregate term of imprisonment of 1,140 months and ten years of supervised release.

IT IS FURTHER ORDERED that Defendant's related motions (Doc. Nos. 1049, 1076, 1081) are DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's motions to file supplemental responses (Doc. No. 1092, 1094) and Motion to Receive a Courtesy Copy certain docket filings (Doc. No. 1096) are DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Sanctions (Doc. No. 1097) is DENIED.

IT IS SO ORDERED.

Signed: February 28, 2022

Frank D. Whitney
United States District Judge